IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02153-REB-KLM

UNITED STATES OF AMERICA,

    Plaintiff(s),

v.

DAVID W. GOLDSTON, individually and as Trustee of Old Times Holding Trust, and Trustee of High Mountain Holding Trust,
NANCY C. GOLDSTON, individually and as a Trustee of Old Times Holding Trust, and Trustee of High Mountain Holding Trust,
WW INVESTMENT GROUP, LLC, as Trustee of Old Times Holding Trust, and Trustee of High Mountain Holding Trust,
ARTHUR C. DAVENPORT, and
FIRST NATIONAL BANK OF PAONIA,

    Defendant(s).
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court pursuant to the United States' Renewed Motion for Sanctions [Docket No. 148; Filed April 2, 2008] and Fed. R. Civ. P. 37(b)(2)(A). By Order dated April 8, 2008, I ordered Defendant WW Investment Group, LLC ("Defendant." "Trustee" or "WW") to respond as to why default judgment should not be entered against it due to its discovery abuses [Docket No. 150]. WW responded to the Renewed Motion for Sanctions on April 18, 2008 [Docket No. 159]. Plaintiff filed its reply regarding the renewed Motion for Sanctions on April 28, 2008 [Docket No. 164]. The Court has reviewed the Renewed Motion, Response, Reply, the entire case file and is sufficiently advised in the premises. The Court finds that WW has failed to comply with several Court Orders relating to discovery, and the Court is prompted to recommend that sanctions be entered against

WW for its dilatory discovery abuses and disrespect for the Court. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C), the Court recommends that default judgment be entered against WW.

## I. Background

On January 14, 2008, Plaintiff moved to compel WW to make a representative available for a Rule 30(b)(6) deposition noticed for January 16, 2008 in Dallas, Texas [Docket No. 116].[1] Because the time for WW's appearance for its deposition had not yet occurred, the Court denied the motion without prejudice [Docket No. 118] ("January 14, 2008 Order"). However, the Court advised WW that "[s]imply refusing to attend, without more, is insufficient to claim the protection of either the Federal Rules of Civil Procedure . . . or the Local Rules of this Court . . . . Under such circumstances, if Defendant actually does not appear for its Rule 30(b)(6) deposition on the scheduled date and time, Fed. R. Civ. P. 37(d)(1)(A)(I) and (3) clearly provides for entry of sanctions." January 14, 2008 Order at 2 [Docket No. 118].

WW failed to attend its deposition, and Plaintiff moved to compel its attendance and for sanctions [Docket No. 120].[2] Prior to this Court's ruling, the Court directed WW to respond to the Motion by January 31, 2008, and to address why default judgment should not be entered against it [Docket No. 124] ("January 23, 2008 Order"). The Court also

---

[1] The location of Dallas, Texas was agreed upon at the request of WW. The deposition was initially noticed for Yakima, Washington near WW's principal place of business, but a corporate representative for WW asked that the deposition be relocated to Dallas. Motion for Sanctions at 2-3 [Docket No. 148].

[2] Plaintiff also moved for entry of default against WW [Docket No. 119] for its failure to answer the complaint, and default was entered against it by the Clerk of Court on January 23, 2008 [Docket No. 123].

2

warned WW that a corporation can appear in Court (including filing pleadings) only by an attorney at law. *DeVilliers v. Atlas Corp.*, 360 F.2d 292, 294 (10th Cir. 1966); *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962); *In re Tax Indebtedness of Stoltz*, 745 F. Supp. 643, 644 n.1 (D. Colo. 1990). Despite my clear admonition, WW, which was already in default, failed to comply with my **January 23, 2008 Order**. It filed its response to the motion beyond the deadline, and filed it through an unnamed corporate "Trustee" who is not a licensed attorney [Docket No. 126].

The Court granted Plaintiff's motion and compelled WW to designate a representative to attend the Rule (30)(b)(6) deposition on February 27, 2008 in Denver, Colorado [Docket No. 128] ("February 12, 2008 Order"). The Order also stated that the "Court will not recommend that default judgment be entered at this time, but Defendant's failure to comply with the Court's Order will result in such a recommendation being submitted." February 12, 2008 Order at 3 [Docket No. 128].

The Court also struck WW's response because it was filed by a nonattorney and ordered WW to pay the reasonable costs incurred by Plaintiff in attending the Dallas, Texas deposition. *Id.* Pursuant to the award of costs, Plaintiff was directed to submit an affidavit or affidavits of the costs it incurred by February 22, 2008. WW's objection to the affidavit(s), if any, was to be filed by an attorney representative no later than February 29, 2008. Plaintiff complied and certified its costs [Docket No. 129], but WW did not properly file an objection.[3]

---

[3] The Court notes that WW, through counsel, did file an emergency motion [Docket No. 131; Filed February 26, 2008] objecting to, among other things, the imposition of an award of costs and claiming an inability to pay; however, it did so in relation to the Court's Order granting Plaintiff's motion to compel and not in relation to Plaintiff's affidavit of costs. Because WW was

3

The Court awarded Plaintiff its reasonable costs incurred in attending WW's January 16, 2008 deposition and directed WW to pay Plaintiff $2,754.88 [Docket No. 137] ("March 5, 2008 Order"). In assessing a reasonable sanction amount, the Court considered the culpability of WW. *See* 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2291, at 723-24 (2d ed. 1994). The Court noted that it had warned WW in advance that its failure to attend the deposition would be subject to sanction [Docket No. 118]. As such, the Court considered WW's decision not to attend its deposition to be willful. In addition, the Court noted that even if it were to consider WW's unsubstantiated claims contained in a separate motion regarding its inability to pay Plaintiff's reasonable costs, WW's alleged indigence did not provide sufficient grounds to avoid imposition of sanctions. *See Bosworth v. Record Data of Md., Inc.*, 102 F.R.D. 518, 520 (D. Md. 1984). WW failed to comply with my **March 5, 2008 Order**.

On the afternoon immediately prior to the day ordered by the Court for WW to attend its deposition in Denver, Colorado, WW, now represented by counsel, filed an emergency motion for a protective order [Docket No. 131]. *See supra* note 3. The timing of WW's motion, less than twenty-four hours before it was required to appear and after Plaintiff's counsel had already departed for Denver, was not well taken by the Court. Moreover, in the motion, WW suggested that it lacked funds to travel to Denver and that it was denied

---

objecting to the Court's Order [Docket No. 128], the Court informed WW that it had no authority to rule on such an objection and struck that portion of the motion [Docket No. 133] ("February 26, 2008 Order"). The Court also interpreted WW's motion as one seeking reconsideration of the Court's Order, and the Court considered, and subsequently denied, this request. In addition, the Court informed WW that its "deadline for objecting to Plaintiff's certification of costs is February 29, 2008. Defendant may, of course, raise its alleged inability to pay as a basis for the Court to limit or reduce the amount of costs awarded to Plaintiff." February 26, 2008 Order at 4 [Docket No. 133]. However, WW thereafter failed to object to Plaintiff's certification of costs and to substantiate its alleged inability to pay these costs.

4

a meaningful opportunity to respond to the motion to compel because it was not represented by counsel. WW alleged that it had "been at the complete control of the government and this court without representation." Motion at 3 [Docket No. 131]. It also alleged that traveling to Denver would be an undue hardship. WW proposed that it should be allowed to appear at the deposition by telephone, or Plaintiff should be forced to travel back to Dallas, Texas and depose a WW representative there, or Plaintiff should pay the expenses of WW to travel to Denver. In support of the motion, WW attached an unsworn "declaration"[4] of a corporate representative referred to as the "Trustee" which indicated that WW lacked the funds to travel, but provided no financial documents or any substantiation of this claim [Docket No. 131-2].

WW's contention that it was somehow the Court and/or Plaintiff who had unfairly placed WW in the position of having to travel to Denver was swiftly rejected by the Court. In denying WW's motion the same day it was filed, the Court held:

> Contrary to Defendant's assertion, Defendant, and not the Court, has put itself in the position of having to provide deposition testimony in Denver by engaging in discovery misconduct, failing to comply with this Court's Orders, and failing to abide by the Federal Rules of Civil Procedure and the Local Rules of this Court. Moreover, the Court is not impressed by Defendant's decision to file its Motion [for Protective Order] on the eve of the deposition, in what appears to be a blatant effort to gain an unfair advantage solely as a result of timing.

February 26, 2008 Order at 2 [Docket No. 133]. The Court ordered WW to attend its deposition on the date and time previously ordered.[5] The Court also reminded WW that

---

[4] The Court uses the term "declaration" loosely, because the document is neither notarized nor signed under penalty of perjury. See 28 U.S.C. § 1746.

[5] The Court also noted that it was unable to determine the effect of WW's alleged inability to travel to Denver based on WW's conclusory allegations about its financial condition.

5

its "failure to comply with this Order will result in the Court recommending that a default judgment be entered against Defendant." *Id.* at 3. WW failed to attend its deposition or to comply with the **February 26, 2008 Order**.

Plaintiff filed the Motion for Sanctions at issue here on April 2, 2008 [Docket No. 148].[6] Plaintiff seeks the entry of a default judgment against WW for, among other things: (1) WW's failure to attend its deposition in Dallas, Texas on January 16, 2008; (2) WW's failure to attend its deposition in Denver, Colorado on February 27, 2008; and (3) WW's failure to comply with Court Orders entered on February 12, 2008 and February 26, 2008

---

February 26, 2008 Order at 3 n.1 [Docket No. 133]. Further, WW was on notice that Plaintiff sought to depose its representative in Denver when Plaintiff filed its motion to compel [Docket No. 120], and WW waived this argument by filing a defective response to that motion [Docket No. 128]. Moreover, even if the Court had considered WW's defective response to the motion to compel, WW did not argue that it lacked financial resources to attend a deposition in Denver therein [Docket No. 126]. In addition, to the extent that WW suggested that Plaintiff should bear WW's costs in attending this deposition, the Court summarily rejected this suggestion. February 26, 2008 Order at 3 n.1 [Docket No. 133]. WW's suggestion that the Court should require Plaintiff to conduct the deposition in Dallas, Texas was equally without merit. The Court noted that Plaintiff previously noticed WW's deposition in Dallas, which WW failed to attend. *Id.* As such, the Court was not persuaded by WW's argument that Plaintiff should be forced to once again travel to Dallas to finally conduct WW's deposition.

[6] Plaintiff moved for sanctions [Docket No. 134] against WW prior to filing the motion at issue here, but the Court denied the motion without prejudice because Plaintiff failed to properly confer as required by D.C. Colo. L. Civ. R. 7.1(A) [Docket No. 145] ("March 27, 2008 Order"). The Court warned WW, however, that if the parties could not resolve their differences and Plaintiff moved for sanctions again, WW's continued bald assertions regarding its financial insolvency would not save it from sanction. March 27, 2008 Order at 2 [Docket No. 145]. The Court also noted that unsupported allegations regarding WW's alleged financial condition were insufficient to justify WW's continued discovery abuses, its repeated failures to abide by the Federal Rules of Civil Procedure, and its repeated noncompliance with this Court's Orders. *Id.* Finally, the Court indicated that a "party to a federal lawsuit cannot excuse its failure to satisfy its obligations by asserting financial difficulties, documented or undocumented. Defendant must find a way to defend itself within the rules or it must offer some authority for why it believes the Court should overlook its disrespect for the Court and the litigation process because of its financial situation." *Id.* at 2-3. *See generally Kiely v. Shores Group, Inc.*, 160 F.R.D. 159, 160-61 (D. Kan. 1995) (refusing to excuse defendant's discovery misconduct based on defendant's representation that it had no assets to participate in the litigation).

6

[Docket Nos. 128 & 133].

In its response to the Motion for Sanctions, WW argued that default judgment should not be entered because (1) "it was unable to comply due to financial constraints" brought about as a "direct result of the actions of the plaintiff" by encumbering the Trusts; (2) Plaintiff was not prejudiced because "bonds have been provided [by benefactors of WW] for the complete satisfaction of all federal tax obligations of David and Nancy Goldston"; and (3) WW, "as a separate legal entity, is not a party to this case. The Trustee of the above-captioned Trusts is the proper defendant." Defendant argued that while WW is "the sole Trustee," "[a]ll actions by the Trustee have been performed only as the Trustee of the Trusts" and WW "is not responsible for or obligated to pay the costs incurred by the Trusts." Response at 4-7 [Docket No. 159]. This third contention is nearly indecipherable. First, WW alleges that it is not the real party interest. Second, WW contends that only the Trustee is the real party in interest. Third, WW then admits that it is "the sole Trustee." *Id.* at 7. Fourth, in a clear example of putting the cart before the horse, WW then argues that any costs incurred by the Trustee must be indemnified by the Trust.

Since the filing of the Motion for Sanctions, Plaintiff filed a Notification of Status of Payment of Costs Imposed Against W.W. Investment Group, LLC [Docket No. 156] ("Status Report") to inform the Court that WW failed to comply with my March 5, 2008 Order, which required WW to pay the reasonable costs incurred by Plaintiff to attend the Dallas, Texas deposition [Docket No. 137]. The Court ordered WW to respond to the Status Report [Docket No. 160]. WW did so and justified its failure to comply with the Court's Order due to its inability "to obtain any money to pay the costs ordered by the court." Response at 1 [Docket No. 165]. It again argued that the Trust is responsible for "bearing any financial

7

burden created by this matter and not the [Trustee] personally." *Id.* at 2. Finally it contended that "the Plaintiff already has the means to recover the costs" by deducting its court-awarded fees from the bonds furnished by WW's benefactors. *Id.* at 3. The Court notes that WW never appealed the award of costs to the District Court, or asked for reconsideration of the March 5, 2008 Order.

The common theme of WW's justifications for its discovery abuses and noncompliance with Court Orders has been that (1) WW cannot afford to participate in this litigation so its responsibilities as a litigant are excused; and (2) benefactors for WW have furnished bonds to the Court and Internal Revenue Service that fully resolve WW's liability so again its responsibilities as a litigant are excused. More recently, in response to Plaintiff's Motion for Sanctions and the Status Report, WW has argued for the first time that it is not the real party in interest, and that the Trust should be held accountable for any conduct attributed to WW as the Trustee.

As a preliminary matter, the Court rejects the argument that WW is not the Defendant or that the Trust's alleged indemnification obligation excuses WW's own conduct throughout the case. First, by WW's own admission, it is the Trustee. Response at 7 [Docket No. 159]. As such, WW is the real party in interest. *See generally Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo.1998) (noting that a Trust is not a legal entity with capacity to sue and holding that the Trustee of the Trust is the real party in interest); *Carpenters & Millwrights Health Benefit Trust Fund v. Domestic Insulation Co.*, 387 F. Supp. 144, 147 (D. Colo. 1975) (same). Second, at issue in the Motion for Sanctions are the discovery abuses committed solely by WW. Whether the Trust ultimately has to pay WW's debt is not relevant to whether WW's conduct violated several Court

Orders and the Federal and Local Rules of Civil Procedure.

Further, it is not for WW to determine that its liability has been resolved and then use that as an excuse for its failure to abide by Court Orders or the rules of the Court. Even if WW had a good faith belief that its liability had been resolved by the payment of bonds, which Plaintiff strenuously disputes, WW is obliged to move for a determination of WW's continued liability via a dispositive motion.[7] In addition, WW's assertions that it lacks the funds to proceed do not excuse it from the requirements of the Federal Rules of Civil Procedure or its need to comply with Court Orders. *Bosworth*, 102 F.R.D. at 521 ("A flat per se policy against the imposition of sanctions under Federal Rule 37 upon any party who is financially indigent does not accord with the purposes of that rule and would open the door to many possible abuses."). Moreover, WW's assertion is especially hollow given that it had the opportunity to attend its deposition in Dallas, Texas at minimal expense, but chose to ignore the warning of the Court and its obligation as a litigant and instead unilaterally decided neither to attend the deposition nor to meet its other litigation obligations. WW did so at its peril and now must suffer the justified consequences of its discovery abuses.

Finally, unsubstantiated claims that a corporate entity cannot afford counsel are also no defense to its litigation abuses committed while unrepresented or to the application of the long-standing rule that a corporation must be represented by counsel. *See In re Bijan-Sara Corp.*, 203 B.R. 358, 359 (2d Cir. 1996) (noting that where no clear showing of financial indigence is made, a corporation cannot appear through a nonattorney). Further,

---

[7] WW has now moved for summary judgment [Docket No. 146], but only after the commission of its myriad discovery abuses.

although some courts have recognized an exception for corporate entities in bankruptcy proceedings, the limited information the Court has here about WW's financial status certainly does not demonstrate that it is a corporation in bankruptcy. *See, e.g.*, *id.* (citing *In Re Holliday's Tax Servs., Inc.*, 417 F. Supp. 182 (E.D.N.Y. 1976)).

## II. Findings

Considering the information set forth above, the Court finds as follows,

(1) WW failed to attend its properly noticed deposition in Dallas, Texas, despite the Court's clear warning that this failure would not be justified and would subject WW to sanctions;

(2) WW failed to comply with my **January 23, 2008 Order** when it filed a response without representation;

(3) WW failed to comply with my **February 26, 2008 Order** when it failed to attend its deposition in Denver, Colorado;

(4) WW failed to comply with my **March 5, 2008 Order** when it failed to pay the reasonable fees of Plaintiff;

(5) WW has failed to substantiate its claim that it is financially incapable of complying with Court Orders or with the Federal and Local Rules of Civil Procedure;

(6) The Court repeatedly gave WW the opportunity to substantiate its claim regarding its financial condition or to offer legal support for its contention that its alleged inability to pay absolved it from complying with Court Orders or the Federal and Local Rules of Civil Procedure. WW failed to do both;

(7) WW's conduct in failing to comply with Court Orders, substantiate its alleged

inability to pay, or timely move for a determination regarding the impact of the alleged bonds on its Court-ordered obligations prior to its noncompliance was willful; and

(8) To date, the Court has issued eleven Orders in relation to WW's failure to comply with Court Orders and its discovery misconduct.

III. Discussion

The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (citation omitted). Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), "when a party fails to comply with a discovery order, the Court may impose a default judgment against the disobedient party as a sanction." *New Age Elecs., Inc. v. Spectrum Communs. Group, Inc.*, No. 06-cv-00723-MSK-MEH, 2007 WL 139327, at *2 (D. Colo. May 9, 2007) (unpublished decision). However, prior to doing so, the Court must consider the factors set forth in *Ehrenhaus*,[8] namely: "(1) the degree of actual prejudice to the [injured party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.,* 167 F.R.D. 90, 101 (D. Colo. 1996).

The sanction of dismissal, including default judgment, "is warranted when 'the

---

[8] The Court notes that pursuant to Rule 37, the *Ehrenhaus* factors apply both to the sanction of default judgment and to dismissal of a case. *See, e.g.*, *New Age Elecs.*, 2007 WL 139327, at *2 (applying the factors to a recommendation for default judgment against defendants for discovery abuses).

aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921). While the Court is mindful of the fact that "[d]efault judgment is a harsh sanction," it is justified when "'predicated upon willfulness, bad faith, or [some] fault of petitioner' rather than the inability to comply." *Signer v. Pimkova*, 05-cv-02039-REB-MJW, 2007 WL 1058578, at *1 (D. Colo. Apr. 6, 2007) (unpublished decision) (citations omitted).

### A. Prejudice to Plaintiff

I find that WW's conduct prejudiced Plaintiff's ability to prosecute its case. In this regard, the Court notes that WW's abuses have caused Plaintiff to expend unnecessary resources and time to seek WW's compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court. WW's conduct has also unnecessarily delayed or prevented Plaintiff from obtaining discovery on key issues, which has prompted the further necessity for Plaintiff to seek relief regarding case deadlines. At the outset, WW's failure to attend its properly-noticed deposition in Dallas, Texas was wholly unjustified. Further, WW's failure to attend its deposition in Denver, Colorado, and its assertions that it did not need to comply with properly-noticed discovery or Court Orders, is equally unjustified. These actions, in addition to those set forth above, clearly prejudiced Plaintiff and negatively impacted its ability to move forward with this case.[9] The Court also notes that

---

[9] WW's contention that Plaintiff has not been prejudiced because it has the means to collect any money owed to it through bonds is unpersuasive. First, WW has offered no conclusive evidence that the bonds could be used to pay Plaintiff's expenses in traveling to depositions which WW failed to attend. According to Plaintiff, the alleged bonds were secured to pay Defendant David Goldston's alleged debt to Plaintiff, not to indemnify WW for its litigation abuses. Further, the fact that money could somehow transfer hands does not mean that

12

Plaintiff contends it is further prejudiced by WW's inclusion of information in its pleadings relating to summary judgment about which Plaintiff did not have the opportunity to conduct discovery because of WW's misconduct.[10]

### B. Interference with the Judicial Process

I find that WW's conduct in this case has interfered with the judicial process. Just as Plaintiffs are burdened by WW's abuses so, too, is the Court. The issue here "is respect for the judicial process and the law." *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003). The Court is, frankly, perplexed and offended by WW's behavior. WW's conduct has required the Court to issue no less than eleven Orders related in some way to WW's unwillingness to comply with the Federal and Local Rules and with its discovery obligations. Moreover, the Court's continual review of this case and the issuance of Orders prompted by WW's discovery abuses and disregard for Court Orders increases the workload of the Court and interferes with the administration of justice. Indeed, Defendant's conduct has required the Court to expend unnecessary effort and time and has taken its attention away from other matters where the parties have fulfilled their obligations and are deserving of prompt resolution of their issues. "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research,

---

Plaintiff has not been prejudiced by its continued efforts to seek WW's compliance with discovery requests and Court Orders.

[10] Plaintiff recently filed a Motion to Strike Exhibit C-2 to [WW's] Response to the United States' Motion for Summary Judgment [Docket No. 180; Filed May 16, 2008]. The Court does not rule on the Motion to Strike at this time. It remains to be seen whether Plaintiff will ultimately be prejudiced by WW's inclusion of undiscovered information in its response to Plaintiff's Motion for Summary Judgment. However, it is abundantly clear that WW's overall conduct prejudiced Plaintiff's ability to expeditiously move forward with its case and required the unnecessary expenditure of money and effort on Plaintiff's part to attempt to secure WW's compliance with Court Orders and its discovery obligations.

analysis, and writing to craft this document." *Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006) (unpublished decision). Moreover, while the Court gave WW the opportunity to substantiate its claims that it was financially incapable of complying with the Court's Orders several times, WW never utilized this opportunity. Instead it continued to docket an unsworn "declaration" from a corporate representative as its primary substantiation.[11] The "bald assertion that [the party] is on the verge of financial collapse is plainly insufficient to establish an inability to pay" or otherwise excuse a party's litigation abuses. *See Dodd Ins. Servs., Inc. v. Royal Ins. Co*, 935 F.2d 1152, 1160 (10th Cir. 1991).

### C. Culpability of Defendant

WW has, without any reasonable excuse, failed to comply with several Orders of the Court and attend its properly noticed deposition. Moreover, WW failed to comply with my Order to reimburse Plaintiff for its costs in attending WW's first deposition. Although the Court gave WW an opportunity to object to the fees submitted by Plaintiff or to provide proof of its financial inability to pay, WW did neither. WW's continued failures to attend its deposition and to comply with Court Orders appear to be willful. The Court notes that WW has not appealed any of the Court's Orders to the District Court or sought any other appropriate relief to excuse its noncompliance. Instead, WW unilaterally decided it was excused from compliance. Simply, WW has known what the Court expected of it, but has

---

[11] The Court is equally unimpressed with the affidavit submitted by WW's counsel that he has been informed that WW cannot afford to pay him, and that he has not been paid [Docket No. 159-2]. This affidavit does not substantiate WW's assertion that it is financially incapable of complying with its legal obligations. *See White v. GMC, Inc.*, 908 F.2d 675, 685 (10th Cir. 1990) (finding that the submission of affidavits indicating that the party would be forced into bankruptcy was insufficient to avoid monetary sanctions).

14

willfully chosen to disregard my Orders. Considering the record before the Court, I must conclude that WW's disregard for my Orders and the discovery process was willful, and that it is responsible for its litigation abuses.

The Court is mindful of the potential impact of WW's financial condition on the finding of willfulness. Had the Court received reasonable substantiation of this alleged condition, the Court could have considered it in deciding the Motion for Sanctions. However, the Court finds that WW has failed to substantiate its claims that it is financially incapable of complying with my Orders. *See generally Dodd*, 935 F.2d at 1160 (holding that the party asserting the defense of financial insolvency has the burden of coming forward with evidence of its financial status); *White*, 908 F.2d at 685 (noting that affidavits containing the mere suggestion of financial insolvency are unhelpful). Further, WW also justifies its misconduct on its unilateral determination that its liability has been resolved and therefore, it no longer needs to comply with the Court's Orders or the rules of the Court. It is not within WW's authority to make this determination, without first seeking such a finding from the Court. WW's failure to do so and, instead, to proceed as if it were excused from its obligations, was also willful.

### D. Advance Notice of Sanction of Dismissal

WW was warned as recently as my Order of April 21, 2008, that the Court was considering the sanction of default judgment [Docket No. 160]. I first warned WW in my January 23, 2008 Order that its failure to comply could result in the Court recommending default judgment [Docket No. 124]. In addition, in my February 12, 2008 Order, I clearly stated that while I would "not recommend that default judgment be entered at this time, Defendant's failure to comply with the Court's Order will result in such a recommendation

15

to the District Court." February 12, 2008 Order at 3 [Docket No. 128]. The Court reiterated this warning in its Order requiring WW to attend its deposition in Denver, Colorado. February 26, 2008 Order at 3 [Docket No. 133]. The Court also informed WW on several occasions that its failure to adequately support its contentions relating to its inability to comply with the Court's Orders would result in sanctions. To date, other than an affidavit from WW's counsel that he has not been paid [Docket No. 159-2] and an unsworn "declaration" from a representative of WW [Docket Nos. 146-4, 159-4], no further proof of indigence has been submitted. WW knew, or reasonably should have known, that its continued litigation abuses in this case and its failure to adequately justify those abuses could result in imposition of the sanction of default judgment. Further, the Motion for Sanctions at issue here requests the sanction of default judgment, and WW has had an opportunity to respond.

### E. Efficacy of a Lesser Sanction

Finally, I conclude that no sanction less than default judgment would be effective. Orders requiring WW's compliance, warnings about possible future sanctions, and the imposition of lesser sanctions have been resoundingly unsuccessful. In fact, leniency on my part has been rewarded with further disrespect for the Court, Plaintiff, and the discovery process. In addition, the Court has already ordered WW to pay a monetary sanction for its discovery abuses, an Order with which WW did not comply. To the extent that the Court gives any credence to WW's assertion that it is incapable of paying a monetary fine, the Court notes that the imposition of a second monetary sanction would likely be futile.

In its response to the Motion for Sanctions, WW insists that lesser sanctions would be more appropriate. Response at 9 [Docket No. 159]. However, it fails to suggest any

16

lesser sanctions that would provide an appropriate remedy.[12]  WW also suggests that "an order entering default judgment would not be just as it would violate the Trustee's right to protect its property."  *Id.* at 10.  WW's misguided belief that abusive discovery conduct and disregard of Court Orders amounts to exercise of its "right to protect its property" reflects a Hatfields and McCoys mentality that has never been sanctioned by the Federal Rules of Civil Procedure.  Moreover, to the extent that WW has property, it has assets, and therefore should not be excused from its failure to pay the Court's previous award of costs.

It is entirely clear to the Court that WW is wholly unconcerned about proceeding with this case under anyone else's direction but its own.  WW's assertion that its actions, "when viewed correctly, have not interfered with the judicial process.  Rather, the actions of the Trustee have been directed toward promoting the proper direction of the judicial process" clearly indicates to the Court that WW is unwilling to acknowledge and correct its misconduct in this case and that lesser sanctions would have no effect.  *See* Response at 5 [Docket No. 159].  Under these circumstances, no lesser sanction is warranted, and default judgment is the appropriate result.  *See, e.g.*, *EBI Sec. Corp. v. Hamouth*, 219 F.R.D. 642, 647-48 (D. Colo. 2004) (entering default judgment for defendants' disregard of discovery orders, failure to meet deadlines to comply or make requests for extension, and inability to offer reasonable justifications for their failures); *Keily*, 160 F.R.D. at 161

---

[12] WW appears to contend that because Plaintiff refused to consider less burdensome alternatives for WW to attend its deposition in Denver, Colorado, Plaintiff is not entitled to sanctions against WW.  Response at 4 [Docket No. 159].  As a preliminary matter, the Court Ordered WW to attend its deposition in Denver on two occasions.  The Court does not fault Plaintiff for demanding that WW comply with the Court's Orders.  Second, WW did not ask Plaintiff to consider a less burdensome alternative until the day prior to the Denver deposition, when Plaintiff's counsel had already traveled to Denver.  Third, Plaintiff had already considered a less burdensome alternative when it agreed to take WW's deposition in Dallas, Texas, and WW failed to take advantage of this opportunity.

("[E]xplaining to the Court that [a party] cannot afford to participate in this action and that the company has no assets . . . is insufficient grounds upon which to avoid the entry of a default judgment."); *United States v. Moser*, 168 F.R.D. 171, 174 (M.D. Pa. 1996) (holding that repeated failures to comply with discovery orders due to party's unilateral determination that it did not need to participate in the litigation justified the Court's entry of default judgment); *see also Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (justifying entry of default judgment, in part, on defendant's prolonged failure to engage counsel); *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997) (entering default judgment due to defendant's failure to attend his deposition multiple times or pay a previous monetary sanction); *Emerick v. Fenick Indus., Inc.*, 539 F2d 1379, 1380-81 (5th Cir. 1976) (upholding sanction of default judgment where defendant failed to comply with discovery orders despite defendant's insistence that it could not comply).

III. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that the Motion for Sanctions be **GRANTED** and that **DEFAULT JUDGMENT** be entered against Defendant WW Investment Group, LLC in an amount to be determined either upon motion or by hearing.

Under Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives

appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: May 23, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix